**Teresa Hoffman OLIPHANT, Plaintiff,**

**v.**

**PERKINS RESTAURANTS OPERATING COMPANY, Ahmad Haji, Defendants.**

Civ. A. No. 94–2022–GLR.

United States District Court,
D. Kansas.

May 10, 1995.

Gail M. Hudek, Paul F. Pautler, Jr., Hudek & Associates, P.C., Kansas City, MO, for plaintiff Teresa Hoffman Oliphant.

John A. Vering, III, Renana B. Abrams, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, Louis P. Britt, III, Donna K. Fisher, Delaine R. Smith, McKnight, Hudson, Lewis & Henderson, Memphis, TN, for defendants Perkins Restaurants, Inc., a Minn. corp., Ahmad Haji, Perkins Restaurants Operating Company, a Delaware limited partnership.

*MEMORANDUM AND ORDER*

RUSHFELT, United States Magistrate Judge.

On the 11th day of April the above-captioned action came on for hearing upon Defendants' Renewed Motion for Judgment as a Matter of Law and Motion to Alter or Amend Judgment (doc. 118). Plaintiff appeared in person and by Gail M. Hudek and Kim Jones, her attorneys. Defendants appeared by Donna K. Fisher, their attorney. After giving due consideration to the motions, the memoranda of the parties, and other matters of record, and after hearing statements and arguments of counsel, the

court took them under advisement. It now makes the following rulings:

This case proceeded to trial by jury from September 15 through 23, 1994. The jury returned a special verdict in favor of plaintiff upon her claim for sex and pregnancy discrimination, pursuant to 42 U.S.C. § 2000e, and awarded her actual and punitive damages in the respective amounts of $50,000 and $115,000 against both defendants. The jury also found for plaintiff upon her claim of outrage, pursuant to the law of Kansas, and awarded her actual damages of $140,500 against both defendants. It further found in her favor upon her claim of negligent retention, also pursuant to Kansas law. It awarded her actual damages of $50,000 upon the latter claim against the defendant Perkins Restaurants, Inc. (Perkins). The jury found for defendants and against plaintiff upon her claims for assault and violations of the Fair Labor Standards Act.

On September 23, 1994, at the conclusion of the trial the court took under advisement the oral motion of defendants for judgment as a matter of law as to all claims, pursuant to Fed.R.Civ.P. 50(a). On October 25, 1994, it conducted a hearing to determine among other matters what amounts of punitive damages, if any, should be awarded plaintiff upon the claim of outrage, pursuant to Kansas law. After receiving evidence and hearing arguments, the court entered an award of punitive damages in the amount of $20,000 against defendant Ahmad Haji (Haji) upon the claim of outrage. It deemed the evidence previously submitted to the jury at trial insufficient, however, to allow punitive damages on that claim as to the defendant Perkins. It thus sustained in part and otherwise overruled the still pending defense motion for judgment as a matter of law.

Upon motion by plaintiff for reconsideration and after further review of the evidence at trial and the law of Kansas, the court determined it had erroneously disallowed punitive damages against defendant Perkins upon the claim of outrage. On January 6, 1995, consequently, it entered an order,

granting the motion for reconsideration, awarding punitive damages against defendant Perkins in the amount of $300,000 upon the claim of outrage, and entering judgment consistent with the verdicts of the jury and the additional findings by the court.

■■■ Fed.R.Civ.P. 50(b) provides as follows:

Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed.... If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law....

Well established principles apply to the consideration of a motion for judgment as a matter of law:[1] Fed.R.Civ.P. 50(a)(1) allows the court to grant a motion for judgment as a matter of law, "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." It may appropriately grant such a motion, "only if the evidence, viewed in the light most favorable to the nonmoving party, 'points but one way and is susceptible to no reasonable inferences supporting' the nonmoving party." *Riggs v. Scrivner, Inc.*, 927 F.2d 1146, 1149 (10th Cir.) (quoting *Zimmerman v. First Fed. Sav. & Loan Ass'n*, 848 F.2d 1047, 1051 (10th Cir.1988)), *cert. denied*, 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). The court is not permitted to evaluate the credibility of witnesses, weigh the evidence, or determine where the preponderance of evidence lies. *Martin v. Unit Rig & Equipment Co.*, 715 F.2d 1434, 1438 (10th Cir.1983). The court, however, may evaluate the evidence to the extent necessary to determine whether there is sufficient evidence to support a jury verdict for the plaintiff, because "a mere scintilla of evidence is insuf-

---

1. The 1987, 1991, and 1993 amendments to Fed. R.Civ.P. 50 have not changed the standards under which the court grants or denies a request

for "judgment as a matter of law," formerly known as "directed verdict." Fed.R.Civ.P. 50 advisory committee notes.

ficient to create a jury question." *Honce v. Vigil,* 1 F.3d 1085, 1088 (10th Cir.1993). With these principles in mind, the court will address the grounds of the motion:

1. *Sufficiency of the evidence to support a finding that defendants' conduct was wilful, wanton or malicious.*

■ Defendants contend the evidence is not sufficient to support a finding that the conduct of defendants was wilful, wanton or malicious. Neither in their memoranda nor in oral argument, however, have they pursued this contention. Upon a motion for judgment as a matter of law or to amend or alter the judgment, the court must consider the evidence in the light most favorable to the plaintiff as the prevailing party and thus sufficient to uphold the finding of the jury.

■ In answer to Questions 6, 12, and 15 of the Special Verdict Form (doc. 103) the jury determined that defendants were wilful, wanton or malicious by both clear and convincing and a preponderance of the evidence. The Memorandum and Order of January 6, 1995, describes much of the evidence which supports these findings. To supplement it, the court will note that the evidence showed that during a period of over one year defendant Haji in his anger and without excuse repeatedly derided, cursed and yelled at plaintiff, called her demeaning names, and threatened to fire her if she complained about him to the upper management of defendant Perkins. He belittled her as a woman and for her pregnancy. At all material times he acted in his capacity as a restaurant manager for defendant Perkins. The evidence also showed that other employees had notified the upper management of Perkins about Haji's misconduct. Viewing all the evidence in the light most favorable to plaintiff, the court finds it amply supports the jury verdict that the misconduct of defendants was wilful, wanton or malicious.

2. *Sufficiency of the evidence to support an award of punitive damages under K.S.A. 60–3072(d)(1) against defendant Perkins.*

Defendants contend the evidence is insufficient to support an award of punitive dam-ages against Perkins upon the claim of outrage. The Memorandum and Order of January 6, 1995, describes the evidence and findings upon this issue. The evidence hereinafter discussed further addresses this issue.

3. *Whether the award of punitive damages against defendants should be reduced, pursuant to K.S.A. 60–3702(b).*

■ Defendants contend the amount of punitive damages should be reduced on the claim of outrage either to nothing or a nominal amount. K.S.A. 60–3702(b) enumerates seven factors which the court should consider in assessing the amount of punitive damages: (1) likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct; (2) degree of defendant's awareness of that likelihood; (3) profitability of defendant's conduct; (4) duration of the misconduct and any intentional concealment of it; (5) attitude of the defendant upon discovery of the misconduct; (6) financial condition of the defendant; and (7) the total deterrent effect of other damages and punishment imposed upon defendant as a result of the misconduct.

In the Memorandum and Order of January 6, 1995, the court explained the rationale for its award of punitive damages upon the claim of outrage. It will elaborate further: The likelihood that serious harm would arise from the misconduct of defendant Haji may have been no more than slight, when it began. It increased through weeks and months for over a year during which he continued to harass plaintiff and other employees, particularly female. Defendant Haji himself testified that plaintiff was very sensitive and emotional and would sometimes cry in the course of being corrected for mistakes.

Both plaintiff herself and other witnesses testified she was often in tears after the defendant had directed abusive language, names, accusations and threats of retaliatory discipline against her. On one occasion in the very small office in which plaintiff did her work, plaintiff lost his temper, threw everything off her desk, threw a stapler against the wall, caused binders to fall on her, and yelled words like "fuck," "shit," and "goddamned bitch" at her. At other times he

expressed to employees his views that he didn't think much of women working, that they were lazy, stupid, ignorant, always sick, having to change their "pad," and using pregnancy as an excuse for absence from work. He characterized pregnant women as unproductive and lazy.

When plaintiff became pregnant, the abuse continued. When she presented a note from her doctor, requiring her to be on medical leave, Haji called her at home almost daily. He angrily demanded that she return to work promptly upon her release. During one of these calls he became angry, swore at her, and told her, 'Get your ass back here. I don't think you're as sick as you say you are.' One might reasonably anticipate that these and the other repeated episodes in the work place—belittling, intimidating, and angrily yelling at an employee with epithets and invective, disparaging both of her and her body as a female—could readily lead to some physical, mental or emotional trauma.

The Memorandum and Order of January 6, 1995, describes much of the evidence which shows that several employees complained to Haji's superiors at Perkins about his abuse of them. Tom Hirunpugdi, Haji's supervisor, had responded simply with observations that Haji was his man and would have to be tolerated. Another employee besides plaintiff had filed a formal complaint with Perkins, alleging sexual harassment by Haji. The employer failed to take adequate measures, to control his treatment of employees, including plaintiff.

If the misconduct of Haji did not directly profit defendants, it served or purported to do so indirectly. Defendant Perkins regarded Haji as a premier success in restaurant management. Haji himself and his supervisors touted him as "Mr. Sales." He had been successful in his prior managerial assignment in Omaha. Perkins had named him Manager of the Year and given him a substantial bonus. The company regarded the restaurant at which plaintiff worked as one with problems which Haji could correct. They knew that his managerial style was intimidating and rough, laced with excitability and harsh temper. They accepted him as he was with the expectation he would increase the profitability of a Perkins restaurant.

For his own part Haji used his favored status with Perkins to intimidate employees. He showed an intent to improve his standing with Perkins and thus protect his own future. He boasted of his success as manager, his increases in pay, and his trips with top managers of the company. He aspired to be a regional manager. He stated that his first priority was to make money for the restaurant. He boasted of his recognition by upper management as Mr. Sales and as Manager of the Year. He instructed plaintiff and others they were never to complain about him to his superiors and that he had too much clout with Perkins to be fired or disciplined. Upon learning of several complaints or inquiries about Haji to the Perkins home office, he directed his anger and suspicion at plaintiff and warned her that he would fire her were she to make any such complaints.

This conduct on the part of Haji continued week after week for a period of over one year at the restaurant where plaintiff worked. Haji himself sought to conceal it by his threats to fire any employee who complained about him to upper management. When supervisors came to the restaurant, he suppressed his misconduct; albeit he failed to do so on at least the one occasion which Tom Hirunpugdi himself witnessed.

Perkins did not seek to conceal any conduct on the part of Haji. As already described, however, the company took ineffective corrective action. The court infers from the evidence that Tom Hirunpugdi chose either to ignore or accept some of the complaints which he received about Haji.

With the order which the court enters in this case, plaintiff will have a judgment for actual damages of $50,000 on the Title VII claim against Perkins and $140,500 against the defendants jointly upon the outrage claim. She will also have a judgment for punitive damages in the total amount of $415,000 against Perkins ($115,000 and $300,-000 respectfully upon the two claims) and $20,000 against Haji (outrage claim). Perkins showed a net worth of $67,000,000 and net profits of $12,600,000 for the year 1993.

The amount of the judgment in this case should serve as an appropriate deterrent against further discriminatory misconduct by defendants.

4. *Whether defendant Ahmad Haji can be held individually liable as an "employer" under 42 U.S.C. § 2000e et seq.*

■ Defendants contend that Haji is not an "employer" within the meaning of Title VII. Plaintiff does not seriously oppose this contention. Upon oral argument she virtually conceded the point, recognizing controlling decisions of the Tenth Circuit Court of Appeals and of the District of Kansas. They hold that the relief allowed by Title VII is against the employer and not against the individual employees, such as Mr. Haji. *Sauers v. Salt Lake County,* 1 F.3d 1122 (10th Cir.1993); *Redpath v. City of Overland Park,* 857 F.Supp. 1448 (D.Kan.1994); *see also, Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir.1994); *Smith v. St. Bernards Regional Med. Ctr.,* 19 F.3d 1254 (8th Cir.1994); *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). The court will sustain the motion to the extent of finding as a matter of law that defendant Ahmad Haji is not an "employer" and thus not liable upon the claim asserted under 42 U.S.C. § 2000e. The court will alter or amend the judgment accordingly.

5. *Whether the evidence suffices to establish a violation of Title VII.*

■ Defendants contend the evidence is insufficient to establish a violation of 42 U.S.C. § 2000e. The court agrees with their description of evidence which showed that Haji exercised managerial misconduct against employees generally, both male and female. The evidence, however, goes much further. It also described numerous habits and specific instances by which Haji bullied and mistreated women more severely than men and directed such abuse against them because they were women. This included not only the use of names like "bitch" and "fucking bitch," but also his belittlement and derogatory comments about their female hygiene and menstrual periods, their using these matters as an excuse for absences, and their pregnancies. The evidence in support of plaintiff showed that Haji abusively treated women far more intensely in degree and varied in nature from what he directed at employees as a whole or against males. Overall the evidence depicted a man who lost his temper and became angry at employees both male and female, but who repeatedly bullied women and not men. It proved discrimination, based both upon a work environment hostile to women and upon discriminatory treatment of plaintiff because of her gender and finally her pregnancy.

6. *Whether the evidence suffices to establish a claim of outrage, and whether any such claim is pre-empted by the Kansas Act Against Discrimination, K.S.A. 44–1001 et seq.*

■ Defendants contend the evidence is insufficient to support a claim of outrage. The court finds sufficient evidence upon which the jury could determine, as it did, that the conduct of Haji was tortiously outrageous within the meaning of the law of Kansas. This Memorandum and Order and that of January 6, 1995, describes actions for a period of over one year "so outrageous in character, and so extreme in degree that a reasonable member of the community would regard this conduct as utterly intolerable and going beyond all bounds of decency in a civilized community ... would arouse a reasonable person's resentment against the actor and lead him or her to exclaim, 'outrageous.'" (Doc. 101, Jury Instruction No. 23.)

This case has some comparability with two others in which claims of outrage were upheld against dispositive motions: *Laughinghouse v. Risser,* 786 F.Supp. 920 (D.Kan. 1992) (overruling motion for judgment notwithstanding the verdict); *Gomez v. Hug,* 7 Kan.App.2d 603, 645 P.2d 916 (1982) (upholding claim against motion for summary judgment). *Laughinghouse* involved a "long-standing pattern of abusive behavior" over a period of eighteen months. This consisted of sexual propositions, criticism of work performance, calling plaintiff "stupid," attacking her personal life, touching her offensively, throwing things, and angrily intimidating

her. In his ruling District Judge Rogers cited and quoted from *Gomez:*

> Unlike many cases cited by defendants, the evidence in this case established a long-standing, daily pattern of abusive behavior. In *Gomez v. Hug,* 7 Kan.App.2d 603, 645 P.2d 916 (1982), the Kansas Court of Appeals indicated that whether racial invective and threats of violence experienced over several days might establish a claim outrage should have been decided by the trier of fact. The court noted:
>
>> The relative positions of Gomez are important here. Hug was the employer. Gomez was the employee. Hug spoke from the position of a county commissioner. These remarks had been made to Gomez by Hug over a period of several days. The tirade unleashed upon Gomez on April 21, 1978, was terrifying to him. He was afraid of Hug, afraid for his job, afraid for his family. Each party argues a different meaning from these statements of Gomez' fear. It is an issue for the trier of fact.
>
> .     .     .     .     .
>
>> Certainly the rough edges of our society still need smoothing down and there must still be freedom to blow off harmless steam. But this vituperation was well beyond the bounds of freedom to blow off harmless steam. It is not a burden of American citizenship in the State of Kansas that such vitriolic bullying as was turned by Hug against Gomez, and its emotional and physical consequences, must be accepted as often as it amuses the speaker to utter it. Kansas courts are not so impotent. At the very least the victim of such an attack has the right to have his grievance heard by a jury of average members of the community to know whether they would exclaim, "Outrageous!"

7 Kan.App.2d at 610–11, 645 P.2d 916. Also cf., *Dawson v. Associates Financial Services Co.,* 215 Kan. 814, 529 P.2d 104 (1974) (trial court erred in dismissing an outrage claim substantiated by evidence of four phone calls attempting to collect on a car loan from a person suffering multiple sclerosis).

786 F.Supp. at 929–30.

The evidence in this case also showed that plaintiff experienced emotional distress severe in nature, directly resulting from the abuse and harassment exercised by defendant Haji. It began with her feeling upset and crying both at work and at home. It developed to a point at which plaintiff felt emotionally drained and threatened with the loss of her job. She worried about the loss of income and health insurance which contributed to the support of her family. Intimidated by Haji's boasts of status with the company and his continual threats of retaliation, plaintiff withheld complaining to his supervisors. She lost sleep and the desire to eat. She became depressed. Notwithstanding her pregnancy, his abusive treatment of plaintiff continued even after a brief hospitalization for rest and after Haji had been given cautionary notes from her physician. The physical and emotional condition of plaintiff deteriorated. She developed a fear for her own life and that of her child.

Upon referral by her doctor the plaintiff visited a psychologist, Dr. Paula Cresser, 47 times. She testified that the abuses of the employment created the stress and reached crisis proportions, after plaintiff became fearful of losing her baby. She found plaintiff to be experiencing sleep disturbances, nightmares, depression, difficulty in swallowing food, nausea, diarrhea, fear of losing a baby in pregnancy. Unrefuted by any other testimony, Dr. Cresser expressed the opinion that working in a mentally stressful and abusive environment at Perkins caused plaintiff to suffer a post-traumatic stress disorder. Dr. Cresser would have encouraged hospitalization, had plaintiff not feared the loss of her job. The psychologist testified that the stress disorder was in part permanent, vulnerable to recurrence, and that plaintiff would require further therapy. Dr. Cresser expressed the opinion that plaintiff was as badly damaged as if she had been physically abused and that the conduct of defendants caused her condition.

Dr. Elizabeth Gontero, plaintiff's obstetrician and gynecologist, had seen plaintiff in-

termittently since 1989. She described plaintiff as a pleasant, hard-working, dignified person who did not exaggerate her problems. She attended plaintiff for her pregnancy, which had developed problems unrelated to the employment. The doctor testified that the stress of the employment aggravated those problems, finally to the point of creating a serious risk to both plaintiff and her baby. By June 21, 1993, about forty days before her termination, plaintiff had developed hysteria, hyperventilation, intense stress, abnormal loss of weight, intractable vomiting, dehydration and fear from the threats by Haji of being fired if she did not like his treatment of her. Dr. Gontero recommended immediate bed rest for 2½ days, hospitalized plaintiff for that purpose, and wrote a note to the employer. After plaintiff returned to work, Mr. Haji continued to harass her. By July 27, four days before the employment terminated, Dr. Gontero found plaintiff very stressed because of her work conditions. On July 30 plaintiff appeared still worse, ill, dehydrated and vomiting. The doctor instructed plaintiff once again to go straight to the hospital.

Defendants elicited some evidence and have argued that the problems of plaintiff were caused by domestic discord and her pregnancy, rather than the conditions of her employment. The jury obviously found otherwise. In its entirety the evidence from plaintiff, her husband, and Drs. Gontero and Cresser, however, provided abundant evidence to support the finding of the jury that the abusive treatment by Haji directly caused her severe emotional distress stress.

█ Defendants further contend that the Kansas Act Against Discrimination (KAAD), K.S.A. 44–1001 to 1044, pre-empts a claim upon the tort of outrage. They have cited *Ridge v. HCA Health Servs. of Kan., Inc.,* No. 91–1280–PFK, 1992 WL 363686 (D.Kan. Nov. 3, 1992) in support of their argument. Citing *Polson v. Davis,* 895 F.2d 705 (10th Cir.1990), *Ridge* holds that KAAD does pre-empt claims under Kansas common law for wrongful termination or retaliatory discharge. *Laughinghouse,* however, specifically addresses the issue where as here a claim of outrage is involved. Distinguishing *Pol-*

*son,* the court held, that KAAD does not pre-empt a state claim of outrage:

> Defendants' third and final argument is that plaintiff's outrage claim is preempted by the statutory provisions of the Kansas Act Against Discrimination (KAAD), K.S.A. 44–1001, *et seq.* Defendants cite *Polson v. Davis,* 895 F.2d 705 (10th Cir. 1990) for this argument. In *Polson,* the court held that KAAD preempted a retaliatory discharge claim. Plaintiff did not bring a discharge claim in this case. Moreover, plaintiff has not sought to expand the exceptions to Kansas' common law employment-at-will doctrine in this case. Therefore, the court does not need to investigate the availability of statutory remedies for the conduct in question. Plaintiff did bring a discrimination claim and could have brought a claim under KAAD. However, the tort of outrage contains elements not required for a claim under KAAD. Courts have held that employment discrimination does not necessarily amount to the tort of outrage. *Fletcher v. Wesley Medical Center,* 585 F.Supp. 1260, 1262 (D.Kan.1984). Accordingly, we do not find that plaintiff's cause of action for outrage was preempted by KAAD.

786 F.Supp. at 930. The court finds *Laughinghouse* applicable to this case.

7. *Whether the evidence suffices to establish a claim for negligent retention, and whether such claim can proceed in a discrimination action where respondeat superior liability is the admitted basis of an employer's liability.*

Defendants contend the evidence is insufficient to establish a claim against defendant Perkins for negligent retention of its employee Ahmad Haji. This and the Memorandum and Order of January 6, 1995, have already described evidence which adequately supports such a claim. It suffices to establish negligence on the part of defendant Perkins in retaining Haji as manager of its restaurant, at least as to the facility where plaintiff was employed.

█ Whether a claim of negligent retention can proceed in the context of this case raises a more difficult issue. The liability of

defendant Perkins for the conduct of its manager Ahmad Haji, pursuant to 42 U.S.C. § 2000e, depends upon the theory of *respondeat superior.* Defendants cite several cases, including *Rothwell v. Werner Enters., Inc.,* 859 F.Supp. 470 (D.Kan.1994), for the proposition that a claim for negligent retention may not proceed when it is undisputed that any liability of defendant Perkins would otherwise be predicated upon a theory of *respondeat superior.* Plaintiff denies the applicability of *Rothwell.* She cites instead *Plains Resources, Inc. v. Gable,* 235 Kan. 580, 682 P.2d 653 (1984) to support the suggestion that claims against the employer may proceed simultaneously upon both theories.

The court must here determine not simply whether plaintiff could proceed through trial upon both theories of liability, but whether she may recover a judgment upon both of them. *Plains Resources* does not address that question. The Kansas Supreme Court found no error in allowing a case against an employer to proceed to trial upon theories both of vicarious liability and of negligent retention. This court finds nothing in *Plains Resources,* however, to indicate that either the trial or appellate court authorized entry of a judgment upon each theory for the same damages. The language of the opinion suggests the contrary in describing the two theories as "alternative." 235 Kan. at 595, 682 P.2d 653.

*Rothwell,* on the other hand, more nearly approaches the issue here. In granting summary judgment for defendant, District Judge John Lungstrum held that plaintiff could not proceed against the employer upon a claim of negligent retention, when it had admitted liability upon a theory of *respondeat superior.* Plaintiff here would distinguish the present case from *Rothwell* by noting that defendant Perkins did not admit liability under *respondeat superior.* The court does not find the admission or lack of it, however, to be a critical difference. More significantly, *Rothwell* recognized the two theories as alternative to each other:

> Under the facts as presented, plaintiff's negligent hiring or retention theory is simply an alternative basis for linking the liability of Mr. Cavender to defendants Werner Enterprises and Drivers Management.... Because Werner Enterprises and Drivers Management admit that they are liable under a theory of respondeat superior, it is not necessary to tack the responsibility for Mr. Cavender's conduct to them by some other means. Plaintiff is not permitted to proceed on a theory of negligent hiring, training, retention or supervision and, thus, defendants' motion as to this claim is granted.

859 F.Supp. at 475, 476.

In the present case defendant Perkins did not admit liability upon a theory of *respondeat superior.* Plaintiff did proceed to trial, nevertheless, both upon that theory and upon negligent retention. The jury verdicts against defendant Perkins upon the discrimination and outrage claims both depend upon the theory of *respondeat superior.* The claims of discrimination under Title VII constitute an alternative, nevertheless, to the claim of negligent retention, at least within the context of this case. The fact that defendant did not admit liability under one theory relates only to the procedure by which she ultimately obtains a judgment. The absence of such an admission does not mean that plaintiff can recover the same damages twice, once under each alternative theory. (Had the verdict upon the claim for negligent retention exceeded one of the statutory ceilings for damages allowable under Title VII, an additional issue might have arisen; but in this case the jury found the actual damages upon each of those two claims to be $50,000 and thus within the prescribed ceilings.)

Plaintiff argues that defendant Perkins waived the right to argue against negligent retention, by not objecting to submission of a jury instruction upon the claim. She cites Fed.R.Civ.P. 51 in support of this contention. In their reply memorandum defendants emphasize the holdings of *Plains Resources* and *Rothwell* that negligent retention and *respondeat superior* provide alternative theories of recovery, that plaintiff could establish liability upon either of them, but cannot obtain recovery upon both of them so as to double her damages.

As already stated, the court accepts the interpretation of Kansas law that the two

theories, at least in the context of this case, are alternative. Because plaintiff exercised the right to proceed to trial upon both theories, the court can hardly fault defendants for not objecting to a jury instruction upon the claim of negligent retention. They do not assert any error in the instruction, only in the judgment. The court views the damages upon the claim of negligent retention to be nothing more than a duplication of the actual damages in the discrimination claims under Title VII. To construe Fed.R.Civ.P. 51 to work a waiver of objection against a duplicative claim in this case would abuse the rule and create a new right plaintiff never had, i.e. to recover the same damages twice. The interpretation sought by plaintiff would stand the rule on its head and use its procedural function to create a substantive right. Such a construction hardly accords with Fed. R.Civ.P. 1. It provides that, "These rules ... shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."

The court also notes two recent cases of this District which indeed challenge the likelihood that the courts of Kansas would recognize a claim of negligent retention in an action, like this one, in which the employer is sued by an employee rather than by a third party. In *Beam v. Concord Hospitality, Inc.*, 873 F.Supp. 491 (D.Kan.1994) District Judge Crow has proposed the possibility of certifying the issue to the Supreme Court of Kansas. He observed as follows:

> While the law is clear that a third party may recover from an employer under a theory of negligent retention or negligent supervision, it is not so clear that an employee injured by a co-employee may recover from the employer under the same theory.

873 F.Supp. at 504. More recently District Judge Lungstrum expressed doubt that Kansas would recognize such a claim by an employee against the employer:

> While it appears that Kansas would recognize a cause of action holding an employer liable for negligent retention or supervision under certain circumstances, it is far from clear that Kansas would recognize or permit recovery against an employer for negligent infliction of emotional distress based on negligent supervision where the underlying wrongful conduct is sexual harassment by an employee.... If faced with the issue, the court believes Kansas would not expand the scope of employer liability to include negligent infliction of emotional distress based on negligent retention or supervision of an employee where the aggrieved plaintiff has an adequate remedy under Kansas statutory law. Pursuant to the KAAD, an aggrieved party may bring an action against an employer for sexual harassment. K.S.A. § 44–1001 *et seq.* Kansas courts would not recognize a tort to accomplish the same purpose.

874 F.Supp. at 1197, 1198.

For all of the foregoing reasons the court sustains in part and overrules in part Defendants' Renewed Motion for Judgment as a Matter of Law and Motion to Alter or Amend the Judgment (doc. 118). It will sustain the motions to the extent of altering and amending the judgment entered January 6, 1995, so as to enter judgment as a matter of law in favor of defendant Ahmad Haji and against plaintiff upon her claims of discrimination against him, pursuant to Title VII, but leaving intact the judgment in her favor against the defendant Perkins upon those claims. The court will also alter and amend the judgment, so that the award of attorneys' fees and expenses in favor of plaintiff upon the Title VII claims shall be entered against defendant Perkins only and not against defendant Haji. The court will also sustain the motions to the extent of altering the judgment upon the claim of negligent retention and entering judgment as a matter of law in favor of defendant Perkins and against plaintiff upon that claim. In all other respects the court overrules the motions.

IT IS SO ORDERED.