Carol BEAM, Plaintiff,

v.

CONCORD HOSPITALITY, INC., a corporation d/b/a Village Inn Restaurant, Defendant.

No. 93–4188–SAC.

United States District Court,
D. Kansas.

Nov. 15, 1994.

William G. Haynes, Frieden, Haynes & Forbes and J. Patrick Walters, Harris & Walters, Topeka, KS, for plaintiff.

John N. Badgerow, Spencer, Fane, Britt & Browne, Overland Park, KS and Jerry L. Pigsley, Lincoln, NE, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

On August 26, 1993, Carol Beam commenced this action against Concord Hospitality, Inc., a corporation d/b/a Village Inn Restaurant. Beam's fifteen page complaint alleges, *inter alia*, that while she was employed by the defendant, a co-worker named Elliott Thurmond made repeated and unwanted sexual advances. Thurmond's conduct was not limited to verbal comments, but also included touching and rubbing against her in an "extremely sexual and offensive manner." Despite numerous complaints to Beam's supervisors, Thurmond's conduct of sexual harassment continued unabated.

Beam claims that she was ultimately discharged by the defendant in retaliation for her complaints of sexual harassment by Thurmond. Beam seeks both compensatory and punitive damages.

On March 29, 1994, this court entered a twenty-two page memorandum and order granting in part and denying in part Concord Hospitality's motion to dismiss Counts III, IV, V, VI, VII and VII of Beam's complaint under Fed.R.Civ.P. 12(b)(6). *See Beam v. Concord Hospitality, Inc.,* No. 93–4188–SAC, 1994 WL 129979, 1994 U.S.Dist. LEXIS 4615 (D.Kan. March 29, 1994).

On September 13, 1994, this court entered a seven-page memorandum and order denying Beam's motion to reconsider (Dk. 61). The court also denied Concord Hospitality's motion to dismiss (Dk. 65), but stated:

> At the time the court considers the defendant's motion for partial summary judgment, the court will consider all of the arguments advanced by the parties concerning the legal and factual viability of Counts III, IV, V, VI and VII.
>
> By so ruling, the court in no way expresses any opinion upon the merits of the defendant's motion to dismiss. The court believes that consideration of the parties' briefs and arguments advanced in regard to the defendant's motion to dismiss and the defendant's motion for partial summary judgment will afford the court a better opportunity to evaluate the respective positions of the parties.

*Beam v. Concord Hospitality, Inc.,* Case No. 93–4188–SAC, 1994 WL 568871, at *3, 1994 U.S.Dist. LEXIS 14960, at *8 (D.Kan. Sept. 13, 1994).

This case comes before the court upon the Concord Hospitality's motion for partial summary judgment (Dk. 91). Specifically, Concord Hospitality seeks summary judgment on Beam's state law claims of negligence (Counts III, IV, V and VII), failure to provide a harassment-free workplace (Count VI) and outrage (all Counts). Beam has filed a response, and Concord Hospitality has filed a reply.

The court, having considered all of the briefs and arguments of counsel, and the applicable law, is now prepared to rule.

## Standards for Summary Judgment

A court grants a motion for summary judgment if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law governing the suit dictates which facts are material or not. *Id.* at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.,* 849 F.2d 1269, 1273 (10th Cir.1988).

The movant's burden under Rule 56 of the Federal Rules of Civil Procedure is to lay out the basis of its motion and to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). "A movant is not required to provide evidence negating an opponent's claim." *Committee for First Amendment v. Campbell,* 962 F.2d 1517, 1521 (10th Cir.1992) (citation omitted).

If the moving party meets its burden, then it becomes the nonmoving party's burden to show the existence of a genuine issue of material fact. *Bacchus Industries, Inc. v. Arvin Industries, Inc.,* 939 F.2d 887, 891 (10th Cir.1991); *see Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) ("If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue

for trial as to elements essential to the non-moving party's case."). When the nonmoving party will have the burden of proof at trial, "Rule 56(e) ... [then] requires the nonmoving party to go beyond the pleadings and by her own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun,* 956 F.2d 949, 951 (10th Cir.1992) (citations omitted); *see Martin,* 3 F.3d at 1414 (non-moving party cannot rest on the mere allegations in the pleadings); *see also Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993) ("Optimistic conjecture, unbridled speculation, or hopeful surmise will not suffice."). The court views the evidence of record and draws inferences from it in the light most favorable to the nonmoving party. *Burnette v. Dow Chemical Co.,* 849 F.2d at 1273.

██ More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## Uncontroverted Facts

Concord Hospitality sets forth twenty statements of uncontroverted facts. Beam responds to most of the statements as uncontroverted or uncontroverted with the addition of some other facts. On one occasion, Beam merely indicates that a statement of fact is controverted, but fails to cite to any portion of the record supporting her contention.

Beam controverts some of the other facts. Beam also sets forth seventy-five additional statements of her own uncontroverted facts. In its reply brief, Concord Hospitality makes no attempt to directly respond to Beam's additional statement of facts.

The court refers Beam to the provisions of D.Kan. Rule 206(c). First, a movant's statement of fact is deemed admitted unless specifically controverted. Second, a memorandum in opposition to a motion for summary judgment "shall begin with ... a concise statement of material facts as to which the party contends a genuine issue exists." Because Beam is not moving for summary judgment, the court sees no reason for the plaintiff to have her own statement of "uncontroverted facts."

In setting forth the uncontroverted facts, the court has endeavored to limit its discussion to those facts necessary to decide the pending motions.

Carol Beam began her employment with Concord Hospitality, d/b/a Village Inn, at 1033 S.W. Gage, Topeka, Kansas in August 1992. Beam was hired by manager Rick Gibbs and started at a rate of pay of $5.50 per hour. Beam's initial supervisors were Gibbs, Brian Bets, Donna Paulsen, and Mike Luman, who replaced Gibbs for a short period. Beam's last supervisors were manager Rexann Adams and assistant manager Peggie Zirger. Beam's job title was Hostess/Key Person. In general, Beam was not interested in working as part of management with Concord Hospitality, although she did consider applying for such a position during one point of her tenure with Concord Hospitality.

Beam was disciplined by Gibbs in September or October 1992 for the restaurant coming up $95 short. On another occasion, Beam was also disciplined by Adams for leaving the safe unlocked and that the safe was $10 short. Beam's job performance was evaluated in November or December 1992 by Adams and Stan Ziemba. Beam was informed that she was doing well and was given a small raise.

In November of 1992, Beam, for the first time, heard sexually harassing remarks from

Thurmond in the kitchen area of the restaurant. Beam was running a shift at that particular time. Thurmond told Beam that he "want[ed] to experience an older woman." Beam walked away from Thurmond after he made this statement. Beam did not complain to anyone about this statement. Beam recalls Thurmond repeating this first comment several times and then Thurmond began "talking about [Beam's] legs," indicating that "they were big and they would feel good around a man and they could probably do a lot of things." Beam cannot recall when Thurmond said this to her. Beam does recall that it was said in the kitchen and was witnessed by a waitress named Kathy Groves and by a waiter, Ashley Belini. Thurmond also told Beam that her "husband was old and fat and couldn't satisfy [her]," and that "[she] needed a younger man." This remark was in conjunction with the other remarks made by Thurmond. Thurmond would add one remark and then use them all over again. Beam told Thurmond many times that she did not like his remarks and that she did not want to hear them. Beam told Thurmond that she would talk to the manager, Adams, about the remarks. Beam went to Adams in November 1992 and complained after Thurmond made additional remarks. Adams told Beam that she would take care of it. Nevertheless, Thurmond persisted in making similar remarks.

In March 1993, Thurmond became angry with Beam because Adams had talked to him about his remarks. Thurmond quit making remarks for a couple of weeks but was rude and obnoxious. Thurmond slammed things down when Beam would have to ask him to do something or ask him a question. Thurmond would make rude remarks about why Beam was not "out front" doing her job there. None of these comments were sexual in nature. When Thurmond was rude, Beam told him that he did not have to act that way and that Beam was only doing her job by asking him to do certain things. Beam was in charge of the restaurant at that time and could direct employees on what they should be doing. Beam complained to Adams in the last part of March about Thurmond's rudeness and Adams told Beam she would take care of it.

In the last part of March 1993, Thurmond touched Beam for the first time on the breast and Thurmond rubbed up against Beam. Thurmond also made remarks about Beam's breasts, stating that they were "nice big breasts" and that "they were a real handful." When Thurmond's harassment of Beam occurred, neither Adams nor Zirger were in the restaurant. Beam first complained to Zirger in late March about Thurmond's harassment. Beam had complained daily to Adams—approximately a hundred times—prior to complaining to Zirger.

After Beam complained to Zirger in late March of 1993, Thurmond's harassment only increased. On two occasions in April 1993, Thurmond unzipped his pants in the dining room and "acted like he was going to take them down and was telling me he wanted to be with me." That was the first time Thurmond said that he wanted to be with Beam. The second time Thurmond told Beam he wanted to have sex with her.

Beam complained to Adams in the first part of April 1993 about Thurmond unzipping his pants and making dirty remarks again. Beam never called the police about Thurmond unzipping his pants in front of her.

Beam did not complain to any other managers, except Ziemba, who was present at Beam's evaluation in 1992 when Beam complained to Adams about Thurmond's sexual remarks. Beam did not otherwise directly complain to Ziemba that she had been sexually harassed, even though Ziemba would visit the restaurant. Beam never complained to Paulsen or Conkel. Beam never contacted any manager at home after any one of the sexual harassment events. Beam wanted Thurmond to be fired, but never asked that he be fired.

In April 1993, Thurmond asked Beam to drive him home that night. Beam told him no. Beam had taken Thurmond home a couple of times when Thurmond first started working at the restaurant. Another male employee went with her when she drove Thurmond home on those previous occasions. After Beam told Thurmond that she would not drive him home because she knew that Thurmond had a car at the restaurant, Thur-

mond responded, "Well, then let's face it, I don't need a ride home, I just want to have sex with you." Beam responded by indicating that she did not want to have anything to do with him and that she did not want to hear anymore of it.

In mid to late April 1993, Thurmond took a banana and some whipped cream, chocolate sauce and a cherry to make a culinary effigy of a penis. Thurmond, apparently proud enough of his frozen fruit and dairy replica to display it, held his facsimile penis up at the counter for Beam and Graves to view, making remarks to the effect that his own penis was "a lot stiffer" and "the chocolate don't run." Beam and Groves apparently walked away upon realizing what Thurmond was doing. Beam did not respond to Thurmond's comments. Beam complained to Adams the next day about the banana incident.

Adams "wrote up" Thurmond for sexual harassment following the banana and unzipping incidents. Adams told Beam that she had written up Thurmond for sexual harassment. Beam asked why Adams had not done more than just write Thurmond up to which Adams responded that she had to write Thurmond up first and that Thurmond would be terminated on the third write-up for harassment. Beam had not seen Concord Hospitality's sexual harassment policy. Beam could not recall whether there was a sexual harassment policy in the employee handbook she received. After Thurmond was written up for sexual harassment, no more sexual harassment occurred.

In March of 1993, after Thurmond had been written up a couple of weeks before, Beam went into the walk-in cooler at the restaurant and Thurmond cornered her in the cooler and screamed at her, pointed his finger and fist in her face. Another employee, Belini, came in and grabbed Beam's arm and pulled her out of the walk-in cooler. Belini then took her into the office and called Adams. Adams spoke to Beam on the telephone and told her she was mad at Beam because Belini had called her instead of Beam. The next day, Adams met with the employees and then wrote up Thurmond for physical harassment. Beam never reported the walk-in cooler incident to the police.

Beam did call the police twice when she found the restaurant unlocked. Beam never called the police in 1993.

Beam told Adams that she was afraid of Thurmond and asked to be on a different shift, but her schedule was left the same. On April 11, 1993, Beam was discharged from the restaurant. Adams told Beam that she was being let go "because people didn't like to work with her." After Beam was discharged, she did not complain to Adam's supervisors. Beam did not contact anyone in Lincoln to complain that her discharge was unfair. Beam applied for and received unemployment benefits.

After Beam was terminated by Concord Hospitality, she filed a charge of discrimination with the Kansas Commission on Human Rights claiming that she was forced to resign due to the harassment.

Beam suffered physical injury when she worked at the restaurant. Beam would have stomach problems and get a headache every day she worked starting in November 1992. Beam also became physically tired from work. Beam's doctor informed her that she had developed an ulcer. Beam also suffered emotional injuries. Beam did not file a worker's compensation claim.

### Arguments of the Parties

Concord Hospitality contends that all of the plaintiff's state law claims are barred by the exclusivity of the Kansas Workers' Compensation Act. Concord Hospitality also contends that all of Beam's state law claim are preempted by the Kansas Act Against Discrimination (KAAD). As to Beam's claims based upon the tort of outrage, Concord Hospitality argues that its conduct does not rise to the level of being extreme or outrageous. Concord Hospitality contends that it is not liable to Beam under a theory or respondeat superior, nor is it liable under a theory of negligent retention or negligent supervision, as Kansas has not recognized such a cause of action in this context. Concord Hospitality also argues that Beam's claim of a common law duty to provide a harassment free workplace is not recognized under Kansas law.

In response, Beam concedes that the Kansas Workers' Compensation Act provides the

exclusive remedy for any injury covered by the act and that an employer is "not liable in tort for injuries suffered by an employee for which compensation is recoverable under the Kansas Workers' compensation Act." Beam argues that her claims for assault, battery and false imprisonment do not seek damages for physical injury and therefore the Kansas Workers' Compensation Act does not provide the exclusive remedy.

Beam contends that she has presented a viable claim against Concord Hospitality based upon the tort of outrage. Specifically, Beam contends that Thurmond's conduct went well beyond the minimum threshold of "outrageous." Under Beam's analysis, Concord Hospitality is apparently liable to her for allowing Thurmond's conduct to continue unabated until Beam's termination, despite her constant requests for intervention. Beam denies that her state law claims are preempted by the KAAD. Beam contends that Kansas does recognize the tort of negligent supervision and/or negligent retention in this factual context.

Beam also attempts to reassert her implied contract claim that Concord Hospitality breached its duty to provide her with a harassment free workplace.

### Analysis

**Is the Kansas Workers' Compensation Act the exclusive remedy for all of Beam's state law claims?**

K.S.A. 44–501 provides in pertinent part:

(a) If in any employment to which the workers compensation act applies, personal injury by accident arising out of and in the course of employment is caused to an employee, the employer shall be liable to pay compensation to the employee in accordance with the provisions of the workers compensation act....

(b) Except as provided in the workers compensation act, no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workers compensation act nor shall an employer be liable to any third party for any injury or death of an employee which was caused under circumstances creating a legal liability against a third party and for which workers compensation is payable by such employer.

In *Dillard v. Strecker*, 255 Kan. 704, 877 P.2d 371 (1994), the Supreme Court of Kansas recently summarized the primary principles underlying the Workers Compensation Act:

It has long been the law of Kansas that an employer's liability for injury to an employee is limited exclusively to recovery under the Workers Compensation Act. As such, where the injury and the employer-employee relationship fall within the scope of the Act, the exclusive remedy provision of K.S.A. 44–501(b) precludes an employee from maintaining a civil action against the employer. *Tomlinson v. Owens–Corning Fiberglas Corp.*, 244 Kan. 506, Syl. ¶ 3, 770 P.2d 833 (1989). In *Hollingsworth v. Fehrs Equip. Co.*, 240 Kan. 398, 401, 729 P.2d 1214 (1986), this court discussed the relevant statutory provision, stating:

"This statute is commonly referred to as the exclusive remedy provision of the Workmen's Compensation Act, K.S.A. 44–501 *et seq.* If a worker can recover benefits for an injury from an employer under the provisions of the Workmen's Compensation Act, its remedy is exclusive, precluding a common-law negligence action for damages against the employer. *Zehring v. Wickham*, 232 Kan. 704, Syl. ¶ 3, 658 P.2d 1004 (1983); *Fugit, Administratrix v. United Beechcraft, Inc.*, 222 Kan. 312, 314, 564 P.2d 521 (1977). This furthers the policy and purpose of the Workmen's Compensation Act, which is to provide an established source of benefits to the employee for injuries arising out of and in the course of his employment, and to shift from the employee to the industry certain burdens incidental to modern industrial operations. *Duncan v. Perry Packing Co.*, 162 Kan. 79, 84, 174 P.2d 78 (1946). Further, the provisions of the Act are to be liberally construed to bring workers under the Act whether or not it is desirable for the specific individual's circumstance. *Zehring v. Wickham*, 232 Kan. 704, 658 P.2d 1004, Syl. ¶ 5."

255 Kan. at 708–709, 877 P.2d 371; *see Thille v. E.L. Farmer & Co., Inc.,* 958 F.2d 328, 329 (10th Cir.1992) ("Under the exclusive remedy provision, 'if a worker is entitled to receive benefits from his employer as compensation for his injury, he cannot maintain a common-law negligence action against that employer for damages.'") (quoting *Griffin v. United States,* 644 F.2d 846, 848 (10th Cir.1981)).

"In order for a worker's injury to be compensable, the worker must be able to establish that the injury occurred by accident 'arising out of' and 'in the course of' employment." *Springston v. IML Freight, Inc.,* 10 Kan.App.2d 501, Syl. ¶ 1, 704 P.2d 394 (1985). It is well settled "that physical injuries resulting from a job-related assault and battery are compensable under the KWCA." *Bernard v. Doskocil Companies, Inc.,* 861 F.Supp. 1006, 1012 (D.Kan.1994) (citing *Springston v. IML Freight, Inc.,* 10 Kan. App.2d 501, 704 P.2d 394 (1985)); *see Brannum v. Spring Lakes Country Club, Inc.,* 203 Kan. 658, Syl. ¶ 6, 455 P.2d 546 (1969) ("Where a supervisor is, without cause, assaulted by a subordinate employee who is disgruntled over conditions of work imposed upon him by the supervisor in the discharge of his duties, the injury to the supervisor arises out of the course of his employment within the meaning of the workmen's compensation act.").

"Mental injuries, however, are not 'personal injuries' within the meaning of the KWCA unless they follow and can be directly traced to a physical injury." *Bernard v. Doskocil Companies, Inc.,* 861 F.Supp. 1006, 1012 (D.Kan.1994); *see Parks v. Hayward's Pit, Inc.,* No. 93–2387–JWL, 1993 WL 545231, 1993 U.S.Dist. LEXIS 18529 (D.Kan. December 21, 1993) ("In her claims, plaintiff has alleged purely emotional injuries due to defendants' sexual harassment. Due to the lack of any physical injury to plaintiff, the court concludes that plaintiff's alleged injuries would not be compensable under the Kansas Worker's Compensation Act."); *Followill v. Emerson Electric Co.,* 234 Kan. 791, Syl., 674 P.2d 1050 (1984) ("Absent some physical injury, purely mental disorders or injuries sustained by an employee, though arising by accident and out of and in the course of employment, are not compensable personal injuries under the Kansas Workmen's Compensation Act."); *Adamson v. Davis Moore Datsun, Inc.,* 19 Kan.App.2d 301, 308, 868 P.2d 546 (1994) ("'It is firmly established in this jurisdiction that traumatic neurosis, following physical injury and shown to be directly traceable to the injury, is compensable under the Workmen's Compensation Act.'") (quoting *Berger v. Hahner, Foreman & Cale, Inc.,* 211 Kan. 541, 544, 506 P.2d 1175 (1973)); *Love v. McDonald's Restaurant,* 13 Kan.App.2d 397, 401, 771 P.2d 557 (1989). "This is so even though financial, marital, or other worries may have contributed thereto." *Adamson,* 19 Kan.App.2d at 308, 868 P.2d 546.

In the case at bar, Concord Hospitality argues that in Kansas "the intentional torts of one employee against another are also covered by the Workers' Compensation Act." The court believes this assertion to be an incorrect overstatement of the law. Intentional torts that produce a *physical injury,* within the meaning of the Workers' Compensation Act, are covered by the Act. However, injuries suffered as a result of intentional torts such as assault[1] or false imprisonment[2] are not necessarily physical in na-

---

**1.** "An assault is an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm. No bodily contact is necessary." *Taiwo v. Vu,* 249 Kan. 585, Syl. ¶ 7, 822 P.2d 1024 (1991).

**2.** "The nature of the action of false imprisonment is succinctly stated in *Comer v. Knowles,* 17 Kan. 436[, 440 (1877)], by Justice Valentine as follows:

False imprisonment is necessarily a wrongful interference with the personal liberty of an individual. The wrong may be committed by words alone, or by acts alone, or by both, and by merely operating on the will of the individual, or by personal violence, or by both. It is not necessary that the individual be confined within a prison, or within walls; or that he be assaulted, or even touched. It is not necessary that there should be any injury done to the individual's person, or to his character, or reputation. Nor is it necessary that the wrongful act be committed with malice, or ill-will, or even with the slightest wrongful intention. Nor is it necessary that the act be under color of any legal or judicial proceeding. All that is necessary is, that the individual be restrained

ture, and therefore would not be compensable under the Workers' Compensation Act. Consequently, the workers' compensation scheme is not the exclusive remedy for "all" intentional torts committed by coworkers.

■ Nevertheless, Concord Hospitality raises the interesting point that because the plaintiff clearly claims to have suffered physical injuries[3] as a result of Thurmond's actions, and because that all of her injuries are directly traceable to her physical injuries, the Workers' Compensation Act constitutes her exclusive remedy. Beam essentially argues that because she does not claim to have suffered any physical injuries on her false imprisonment, assault and battery claims, she is not barred by the exclusive remedy of the Workers' Compensation Act.

In *Bernard v. Doskocil Companies, Inc.*, 861 F.Supp. 1006 (D.Kan.1994), the plaintiff, a black male, claimed, *inter alia*, that he was subjected to race discrimination, and asserted claims based upon violations of Title VII, the tort of negligent retention, assault and battery under Kansas law, and intentional infliction of emotional distress. The plaintiff claimed that he was repeatedly subjected to derogatory racial comments and jokes. The plaintiff was injured when he sat on a tungsten welding tip protruding vertically from his chair; the tip punctured his buttocks.

In seeking summary judgment on the plaintiff's claims for the intentional infliction of emotional distress, the defendant argued that the physical injury to plaintiff's buttocks was "at the core" of his cause of action for intentional infliction of emotional distress and, therefore, as with his claim for assault and battery, plaintiff's only mode of recourse was under the KWCA.[4] The plaintiff argued otherwise, contending that his action for intentional infliction of emotional distress

sought to recover damages for non-physical as opposed to physical injuries.

In addressing this issue the court stated:

There are no Kansas cases directly addressing this issue. However, Professor Larson, author of the preeminent national authority on workmen's compensation law, has offered this analysis:

If the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a make weight, the suit should not be barred. But if the essence of the action is recovery for physical injury or death, including in "physical" the kinds of mental or nervous injury that cause disability, the action should be barred even if it can be cast in the form of a normally non-physical tort.

2A Larson, *Law of Workmen's Compensation* § 64.45(a), at 13–180 (1993). A number of courts have followed Professor Larson's analysis in cases similar to the present one and found that civil actions seeking to recover damages for emotional distress are not precluded by exclusive remedies provisions in workmen's compensation acts absent a direct tie between the physical and mental injuries. *See, e.g. Lapinad v. Pacific Oldsmobile–GMC, Inc.*, 679 F.Supp. 991, 994–95 (D.Hawaii 1988) (contrasting action for intentional infliction of emotional distress with action for assault and battery—similar to this case—and noting that "in the case of intentional infliction of emotional distress, there is an entire class of harms which are left uncompensated under worker's compensation"); *Vigil v. Safeway Stores, Inc.*, 555 F.Supp. 1049, 1050–51 (D.Colo.1983) (holding intentional infliction of emotional distress claim not precluded when based mainly on mental suffering and humiliation, and only periph-

---

of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard."
*Munsell v. Ideal Food Stores*, 208 Kan. 909, 924–925, 494 P.2d 1063 (1972).

**3.** Specifically, Beam claims that the Thurmond's actions caused the development or aggravation of an ulcer. Beam claims that an ulcer is an "objective physical manifestation[ ] of emotional

distress upon which a claim for negligent infliction of emotion distress may be based." CH argues that an ulcer would qualify as a physical injury within the meaning of the Kansas Workers' Compensation Act.

**4.** The plaintiff conceded that the KWCA was the exclusive remedy for his claims for assault and battery.

erally on physical pain and suffering); *Iverson v. Atlas Pacific Engineering,* 143 Cal.App.3d 219, 229, 191 Cal.Rptr. 696, 703 (1983) ("Where, as here, intentional physical acts, ratified by the employer, allegedly cause non-compensable harm primarily emotional in nature, we conclude that the exclusive remedy provisions do not preclude civil claims."); *Broaddus v. Ferndale Fastener Division,* 84 Mich.App. 593, 599, 269 N.W.2d 689, 692 (1978) (holding claim for mental anguish not precluded because "not an action for mental damages incidentally resulting from an industrial injury").

Applying Professor Larson's analysis to the case at bar, the court finds that plaintiff's action for intentional infliction of emotional distress is not precluded by K.S.A. § 44–501(b) because "the essence" of the tort alleged is "non-physical" and "the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a make weight." Larson, *supra.* Although some portion of plaintiff's alleged severe emotional distress may arguably be attributable to or connected with the physical injury to his buttocks and therefore compensable under the KWCA, for the most part, plaintiff's claims of mental injuries appear to be a result of the cumulative effect of all of the alleged incidents of harassment, only one of which involved any physical contact. Certainly, it would be difficult to directly trace all of plaintiff's alleged severe emotional distress to his getting poked in the rear end. *See Love,* 13 Kan.App.2d at 401 [771 P.2d 557]. Hence, plaintiff's claim for intentional infliction of emotional distress seeking damages for injuries solely mental in nature must be allowed to go forward, or else his mental injuries will be left largely uncompensated. *See Lapinad, supra,* 679 F.Supp. at 995. Defendant's motion for summary judgment on plaintiff's "sixth cause of action" is accordingly denied.

*Id.* 861 F.Supp. at 1016–1017.

Based upon the arguments and facts presented, the court is unable to say with confidence that all of the plaintiffs' emotional injuries are directly traceable to her physical injuries. To the extent that the plaintiff has suffered a physical injury as a result of Thurmond's or Concord Hospitality's actions, she is barred by the exclusive remedy of the Worker's Compensation Act, as is she barred from the recovery for any emotional distress directly related to or stemming from any physical injury. Conversely, to the extent that she could not recover under the Workers' Compensation Act, *i.e.,* that she suffered no physical injury, she is not barred by the exclusive remedy.

**Does the KAAD preempt Beam's state law claims?**

■ Concord Hospitality contends that Beam's state law claims are preempted by the KAAD. Based upon the Tenth Circuit's opinion in *Polson v. Davis,* 895 F.2d 705, 709 (10th Cir.1990), Concord Hospitality contends that the KAAD provides an adequate and exclusive remedy for violations alleged by Beam. Beam responds, arguing that *Polson* only concerned the issue of whether a state law retaliatory discharge claim based upon a violation of public policy for the recovery of tort damages is precluded by the KAAD. Because she is seeking remedies under common law tort claims that are entirely different from the remedies available under the KAAD, her claims are not preempted.

In *Polson,* the district court granted the summary judgment to the defendants on the plaintiff's state law retaliatory discharge claim. The Tenth Circuit affirmed the district court's ruling, adopting the view "that KAAD provides an adequate and exclusive state remedy for violations of the public policy enunciated therein." 895 F.2d at 709.

While Concord Hospitality's argument is imaginative, it has not directed the court's attention to any authority supporting its broad interpretation of the KAAD. Nor has Concord Hospitality made any meaningful attempt to demonstrate that the KAAD adequately addresses the plaintiff's claims. In *Laughinghouse v. Risser,* 786 F.Supp. 920 (D.Kan.1992), the defendants argued that the plaintiff's outrage claim was preempted by the statutory provisions of the KAAD. In supporting their argument, the defendants cited *Polson.* In rejecting the defendants' argument, Judge Rogers stated:

In *Polson,* the court held that KAAD preempted a retaliatory discharge claim. Plaintiff did not bring a discharge claim in this case. Moreover, plaintiff has not sought to expand the exceptions to Kansas' common law employment-at-will doctrine in this case. Therefore, the court does not need to investigate the availability of statutory remedies for the conduct in question. Plaintiff did bring a discrimination claim and could have brought a claim under KAAD. However, the tort of outrage contains elements not required for a claim under KAAD. Courts have held that employment discrimination does not necessarily amount to the tort of outrage. *Fletcher v. Wesley Medical Center,* 585 F.Supp. 1260, 1262 (D.Kan.1984). Accordingly, we do not find that plaintiff's cause of action for outrage was preempted by KAAD.

786 F.Supp. at 930. *But see Adair v. Beech Aircraft Corp.,* No. 90–1003–K, 1991 WL 97610, 1991 U.S.Dist. LEXIS 7442 (D.Kan. May 29, 1991). Similarly, in the absence of any meaningful analysis, this court is unable to conclude that Beam's state law claims are preempted by the KAAD.

**Does the plaintiff state a viable claim for the tort of outrage?**

▮ Concord Hospitality contends that neither Thurmond's conduct nor its own conduct is sufficiently egregious to permit Beam's claim based upon the tort of outrage to survive summary judgment. Beam contends she has presented a viable claim as she was subjected to extreme and outrageous conduct and that she suffered severe emotional distress.

▮ The Kansas Supreme Court has recognized the tort of outrage or intentional infliction of emotional distress [5] as stated in the Restatement (Second) of Torts § 46(1) (1963). *Dawson v. Associates Financial Services Co.,* 215 Kan. 814, 820, 529 P.2d 104 (1974). The tort "is not a favored cause of action under Kansas law." *E.E.O.C. v. General Motors Corp.,* 713 F.Supp. 1394, 1396–97 (D.Kan.1989). "The Kansas courts have been reluctant to extend the outrage cause of action to discrimination claims, including claims of sexual harassment, arising in the employment setting. *Laughinghouse v. Risser,* 754 F.Supp. 836, 843 (D.Kan.1990); [6] *see Willcox v. Boeing Military Airplane Co.,* No. 87–1015–C, 1989 WL 107728, at *6, 1989 U.S.Dist. LEXIS 11034, at *15 (D.Kan. August 23, 1989).

The Kansas Supreme Court recently discussed the tort of outrage:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. [Citations omitted.] Proof of four elements is required to establish the cause of action: (1) The conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe.

"Liability for extreme emotional distress has two threshold requirements which must be met and which the court must, in the first instance, determine: (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so

---

**5.** The torts of outrage and the intentional infliction of emotional distress are interchangeable terms for the same cause of action. *Taiwo v. Vu,* 249 Kan. 585, 586, 822 P.2d 1024 (1991); *Roberts v. Saylor,* 230 Kan. 289, 637 P.2d 1175 (1981).

**6.** In *Laughinghouse,* the plaintiff was subjected to constant abuse and harassment by her supervisor over a two year period. The harassment and abuse took the form of screaming and cursing, unwanted touchings and sexual comments, fits of rage which included throwing things and tearing up files, and threats of termination. The supervisor treated the plaintiff "like an animal." Although the supervisor was abusive to many people, his treatment of the plaintiff "was unique in its constancy and severity." 754 F.Supp. at 843. Based upon "the nature of the abuse coupled with its constancy," Judge Rogers denied the defendants' motion for summary judgment on the plaintiff's outrage claim. 754 F.Supp. at 844.

severe that no reasonable person should be expected to endure it."

*Taiwo v. Vu,* 249 Kan. 585, 592, 822 P.2d 1024 (1991) (quoting *Roberts,* 230 Kan. at 292–93, 637 P.2d 1175).[7]

The Supreme Court of Kansas went on to discuss the type of conduct that is extreme and outrageous enough to permit recover under the tort of outrage:

> "In *Dotson v. McLaughlin,* 216 Kan. [201] at 210 [531 P.2d 1] [ (1975) ], Mr. Justice Prager speaking for the court adopted guidelines from the Restatement of Torts. It was pointed out that recovery must depend on the facts and circumstances of each case but liability may only be found in those cases where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. It was further said liability may be found to exist generally in a case when the recitation of facts to an average citizen would arouse resentment against the actor, and lead that citizen to spontaneously exclaim, 'Outrageous!'

> "It should be understood that liability does not arise from mere insults, indignities, threats, annoyances, petty expressions, or other trivialities. Members of the public are necessarily expected and required to be hardened to a certain amount of criticism, rough language and to occasional acts and words that are definitely inconsiderate and unkind. The law should not intervene where someone's feelings merely are hurt. Freedom remains to express an unflattering opinion and to blow off relatively harmless steam which comes from an uncontrollable temper. Conduct to be a sufficient basis for an action to recover for emotional distress must be out-

rageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society."

249 Kan. at 592–593, 822 P.2d 1024 (quoting *Roberts,* 230 Kan. at 293, 637 P.2d 1175).

In *Gomez v. Hug,* 7 Kan.App.2d 603, 645 P.2d 916 (1982), the plaintiff, an employee, was subjected to a stream of vulgar comments, racial epithets and threats of physical violence. The court of appeals concluded that summary judgment was inappropriate:

> Certainly there is no occasion for the law to intervene in every case where someone's feelings are hurt. Certainly the rough edges of our society still need smoothing down and there must still be freedom to blow off harmless steam. But this vituperation was well beyond the bounds of freedom to blow off harmless steam. It is not a burden of American citizenship in the State of Kansas that such vitriolic bullying as was turned by Hug against Gomez, and its emotional and physical consequences, must be accepted without possibility of redress and accepted as often as it amuses the speaker to utter it. Kansas courts are not so impotent. At the very least the victim of such an attack has the right to have his grievance heard by a jury of average members of the community to know whether they would exclaim. "Outrageous!"

7 Kan.App.2d at 610–11, 645 P.2d 916.

Assuming, *arguendo,* that the Concord Hospitality would be liable for Thurmond's conduct under a theory of negligent retention and supervision, the court concludes that the Concord Hospitality is entitled to summary judgment on the plaintiff's claim based upon the tort of outrage. Although Thurmond's conduct was rude, abrasive, and unprofessional, the court is unable to conclude that

---

7. In *Taiwo,* the plaintiffs filed a civil suit against the defendant alleging assault, battery, false imprisonment and intentional infliction of emotional distress. The dispute in that case did initially rise out of the employee/employer relationship. Specifically, the disagreement between Mrs. Taiwo and Vu concerned Mrs. Taiwo's final paycheck. During an argument about the amount of the final paycheck, the defendant apparently shoved Mrs. Taiwo in the chest and subsequently locked Mrs. Taiwo inside the day-care center. Vu also made false accusations to the police indicating that Mr. Taiwo had vandalized her car. Vu also instructed another employee, Sally Matthies, to tell the police that she observed the Taiwo's vandalism, when in fact she did not witness any acts of vandalism by the Taiwo's. The jury returned a verdict in favor of the plaintiffs in the amount of $20,000 and the trial judge assessed $3,000 in punitive damages. The Supreme Court of Kansas affirmed the judgment of the district court.

his conduct and/or Concord Hospitality's conduct was so extreme or outrageous so as to permit recovery.

**Does Kansas recognize the tort of negligent retention and/or negligent supervision in this context?** [8]

In light of the fact that some of the plaintiff's state law claims are still viable, the court must turn to the issue of whether Concord Hospitality is liable to Beam on any of her remaining claims. There are two theories under which Concord Hospitality could conceivably be liable to Beam for the acts of Thurmond:

1. Vicarious liability and/or

2. Negligent retention and/or negligent supervision Beam concedes that she cannot prevail under a theory of vicarious liability as there is no evidence that Thurmond's tortious actions were within the course and scope of his employment. The central issue in this case is whether Kansas would recognize the tort of negligent supervision and/or negligent retention where the party seeking to impose liability on the employer is an employee.

 Kansas has long recognized a cause of action for an employer's negligent hiring and/or retention of an unfit or incompetent employee. *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 590–591, 682 P.2d 653 (1984) (citations omitted). Liability for negligent hiring and/or retention is not predicated on a theory of vicarious liability. "[A] master may be liable for injury caused by the wilful wrong of his servant on the basis of his negligence in hiring or retaining such servant, entirely aside from the doctrine of respondeat superior." 235 Kan. at 590, 682 P.2d 653 (quoting 53 *Am.Jur.2d, Master & Servant* § 438, p. 457).

The negligent hiring and/or retention doctrine recognizes that an employer has a duty to use reasonable care in the selection and retention of employees. This duty requires that an employer hire and retain only safe and competent employees. An employer breaches this duty when it hires

or retains employees that it knows or should know are incompetent. 29 *Am.Jur. Trials, Negligent Hiring of Employee* § 2, p. 276. Liability exists under either of these doctrines relating to negligent hiring or retention despite the fact the direct cause of injury to the injured person is the negligent or intentional acts of an employee acting outside the scope of his employment. 29 *Am.Jur. Trials, Negligent Hiring of Employee* § 2, p. 276.

235 Kan. at 590, 682 P.2d 653; *see Perkins v. Spivey*, 911 F.2d 22, 30–31 (8th Cir.1990) (discussing the distinction between the doctrine of *respondeat superior* and negligent hiring and/or retention under Kansas law), *cert. denied*, 499 U.S. 920, 111 S.Ct. 1309, 113 L.Ed.2d 243 (1991).

In *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 819 P.2d 587 (1991), the plaintiff successfully asserted a negligent retention and supervision claim against a school district who hired a bus driver who allegedly molested a six-year-old girl. In pertinent part, the court stated:

When a third party asserts a negligent retention and supervision claim against an employer, liability results not because of the employer-employee relationship, but because the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor. The employer is subject to liability only for such harm as is within that risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee that the employer had reason to believe would be likely to cause harm. However, it is not necessary that the precise nature of the injury alleged by the third-party plaintiff would have been foreseen by the employer ...

Whether risk of harm is reasonably foreseeable is a question to be determined by the trier of fact. Only when reasonable persons could arrive at but one conclusion

---

**8.** The plaintiff apparently concedes that there is no factual basis to support her negligent hiring claim.

may the court determine the question as a matter of law.

249 Kan. at 362, 819 P.2d 587.

While the law is clear that a third party may recover from an employer under a theory of negligent retention or negligent supervision, it is not so clear that an employee injured by a co-employee may recover from the employer under the same theory. In *Polson,* the plaintiff alleged, as a common law tort, that the defendant was negligent in supervising her intermediate superior, thereby allowing him to violate her civil rights. In pertinent part, the Tenth Circuit stated:

> Plaintiff alleges, as a common law tort, that defendant City was negligent in supervising her immediate superior, defendant Davis, thereby allowing him to violate her civil rights. The district court granted summary judgment to defendants on this claim based on its conclusion that this cause of action does not exist in *Polson* [*v. Davis* ], 635 F.Supp. [1130] at 1151 [ (D.Kan.1986) ]. Plaintiff has cited no cases, in Kansas or elsewhere, recognizing such a cause of action. She merely argues on logic that because the city has a duty not to discriminate, it also has a duty to properly supervise its agents.

> We note that the Nebraska Supreme Court, when faced with the choice, declined to recognize negligent supervision as a common law tort. See *Alford v. Life Savers, Inc.,* 210 Neb. 441, 315 N.W.2d 260 (1982). We also observe that this cause of action, once recognized, would necessarily arise any time a middle level supervisor engaged in discriminatory conduct. We think it unlikely that the Kansas courts would adopt a liability rule with such broad implications.

> This inventive cause of action appears to be nothing more than an attempt to circumvent the strictures of the employment-at-will doctrine by implying a duty that exposes higher level supervisors to liability for actions for which her immediate supervisors are not liable. We affirm the district court's entry of summary judgment on this issue.

895 F.2d at 710.

In *Anspach v. Tomkins Industries, Inc.,* 817 F.Supp. 1499 (D.Kan.1993), employees (who were husband and wife) asserted negligence claims against their employer on several theories of negligence: (1) negligent retention and supervision; (2) failure to prevent a dangerous situation, and (3) negligent infliction of emotional distress. The district court initially granted summary judgment against these claims based solely upon the Tenth Circuit's decision in *Polson.* In addressing the plaintiffs' motion to reconsider, Judge O'Connor stated:

> The Tenth Circuit Court of Appeals observed in *Polson v. Davis,* 895 F.2d 705, 710 (10th Cir.1990), that the Kansas courts had not recognized a cause of action for negligent supervision. At the time Polson was written, that was an accurate statement. In 1991, the Kansas Supreme Court decided the case of *Kansas State Bank & Trust Company v. Specialized Transportation Services,* 249 Kan. 348, 819 P.2d 587 (1991). In addressing the foreseeability issue, the court began its analysis by stating: "When a third party asserts a negligent retention and supervision claim against an employer...." *Kansas State Bank,* 249 Kan. at 362, 819 P.2d at 598. This is the first reference in any Kansas appellate opinion to suggest that a cause of action for negligent supervision might exist in Kansas. Prior opinions, including those cited in Kansas State Bank on the issue of employer liability, did not involve claims of negligent supervision, but addressed claims of negligent hiring and retention. See *Plains Resources, Inc. v. Gable,* 235 Kan. 580, 682 P.2d 653 (1984); *Hollinger* [*v. Starmont Hospital* ], 2 Kan.App.2d 302, 578 P.2d 1121 [ (1978) ]. The Kansas Supreme Court did not provide any analysis or authority to support its apparent recognition of·this cause of action, nor did the court provide any indication as to what might be the elements of such a claim. However, the court's recognition of the cause of action is implicit in the language of the *Kansas State Bank* opinion, and therefore serious doubt has been cast on the continued validity of *Polson's* statement that a cause of action for negligent supervision does not exist in Kansas.

The instant motion for summary judgment can be adjudicated without resolving the apparent conflict between *Polson* and *Kansas State Bank.* On the issue of negligent retention and supervision, *Kansas State Bank* and the other cases cited by plaintiff all concern situations where the alleged victim of the employee's tortious activity is a member of the public, not another employee of the defendant. It has long been the law in Kansas that an employer is not liable for injuries inflicted by one employee upon another employee when the act causing the injury was not done to promote the employer's business and was no part of the employee's duties. *Balin v. Lysle Rishel Post. No. 68,* 177 Kan. 520, syl. ¶ 5, 280 P.2d 623 (1955), quoted in *Hollinger,* 2 Kan.App.2d at 307, 578 P.2d at 1127; *Gabbard v. Sharp,* 167 Kan. 354, 205 P.2d 960 (1949); *Zamora v. Wilson & Co.,* 129 Kan. 285, 282 P. 719 (1929); *Burgert v. Union Pac. R.R. Co.,* 240 F.2d 207, 211–12 (8th Cir.1957) (following Kansas law). As the court has previously discussed, the uncontroverted facts do not permit a reasonable inference that the harassment inflicted on plaintiff by her co-workers was within the scope of their employment. Accordingly, summary judgment is appropriate on plaintiff's negligence claims, whether the claims are based on negligent retention, negligent supervision, or negligent failure to prevent a dangerous situation.

817 F.Supp. at 1519–1520. Both *Polson* and *Anspach* were decided before the Supreme Court of Kansas' decision in *Kansas State Bank & Tr. Co.*

In *Naab v. Inland Container Corp.,* No. 93–1501–PFK, 1994 WL 70268, 1994 U.S.Dist. LEXIS 2440 (D.Kan. February 28, 1994), Chief Judge Kelly dismissed a claim of negligent supervision of a supervisor in cases of employment termination, based primarily upon his conclusion that recognizing such a tort would circumvent and undermine the employment at will doctrine. In *Dorner v. Polsinelli, White, Vardeman & Shalton,* 856 F.Supp. 1483, 1489–1491 (D.Kan.1994), Judge O'Connor, relying in part on *Naab,* held that Kansas would not recognize the tort of negligent supervision in a case where the plaintiff/employee alleged that the defendant/employer failed to properly supervise its employees who miscalculated paychecks, treated female and males differently, and for retaliatory termination.

In contrast, in *Perkins,* the Eighth Circuit has apparently reached a contrary interpretation of Kansas law. 911 F.2d at 31 n. 9 ("The fact that the injured party in *Plains Resources, Inc.* was not another employee is irrelevant. The common law doctrine as developed in Kansas focuses on the direct liability of the employer for its negligence in hiring and retaining an unfit employee who harms another person. We find no case in which the identity of the person harmed is important.").

In *Bernard v. Doskocil Companies, Inc.,* 861 F.Supp. 1006 (D.Kan.1994), applying the test set forth in *Kansas State Bank,* the court considered the plaintiff/employee's negligent retention claims against his employer. Judge Belot concluded, however, that the plaintiff failed to present sufficient evidence to support a claim of negligent retention under Kansas law. Similarly, in *Ulrich v. K-Mart Corp.,* 858 F.Supp. 1087 (D.Kan.1994), the plaintiff asserted negligent retention claims against her employer based upon its retention of a male co-worker who sexually harassed the plaintiff. Judge Belot, although expressing "some reservations about whether such claims are cognizable in the circumstances presented here" based upon *Polson* and *Anspach,* 858 F.Supp. at 1094, n. 6, applied the principles of *Kansas State Bank,* to evaluate the plaintiff's claim. However, the court concluded that there was insufficient evidence to support the plaintiff's claim.

In *Price v. Automotive Controls Corp.* No. 90–1193–JTR, 1994 WL 542086, 1994 U.S.Dist. LEXIS 14215 (Sept. 29, 1994), Magistrate Judge Reid submitted a plaintiff's negligent supervision and/or retention claims to the jury in a case brought by an employee against an employer. The jury returned a verdict in favor of the defendant on those claims. The opinion contains no discussion of the issue presented here, as the issue raised by Concord Hospitality in this case was ap-

parently not raised by the defendant in *Price*.

This discussion demonstrates to the court that the issue of whether Kansas would recognize the tort of negligent retention and/or negligent supervision in this context is not so cut and dried as the parties would have the court believe. On the one hand, the weight of authority would appear to favor the defendant's position. On the other hand, the general language of the Supreme Court's decision in *Kansas State Bank* could be read as supportive of the plaintiff's position. Moreover, if Kansas were to recognize the tort in this context, the plaintiff has presented a compelling case to embrace such a theory as she is not merely attempting to circumvent the employment at will doctrine.

Of course, the court could simply attempt to determine the law of Kansas from the available case law. Because the court does not believe the correct interpretation of the law is clear, and because the law of Kansas determines this issue, the court is contemplating certifying this issue to the Supreme Court of Kansas. K.S.A. 60–3201 provides:

> The Kansas supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

Prior to certifying this issue, the court instructs the parties to address the following issues:

1. Does this case present a proper issue for certification to the Kansas Supreme Court?

2. If the court determines that it is appropriate to certify this issue to the Kansas Supreme Court, how should the court phrase the issue to be certified?

The parties shall file their responses to this order within ten days of the date this order is filed. After considering the parties' responses, the court will enter an appropriate order.

### Implied Contract Claim: Count VI

 Beam argues that Concord Hospitality breached an implied in fact contract when it terminated her because of her sexual harassment complaints. Beam expressly states that the duties breached by the defendant "arose as a result of an implied in fact contract, not because of a 'common law duty.'" Concord Hospitality contends that based upon the fact that the court's March 29, 1994, memorandum and order disposed of the plaintiff's claims that it breached its contractual duties to follow its own policies by granting its motion to dismiss those claims as uncontested, Beam should now be barred from resurrecting those claims in response to its motion for partial summary judgment.

The court agrees that a response to a moving party's motion for partial summary judgment is not an opportunity for the nonmoving party to breath new life into a claim previously pronounced dead. The court's August 29, 1994, memorandum and order and the court's September 13, 1994, memorandum and order denying the plaintiff's motion for reconsideration essentially foreclose the presentation of this claim. In light of the arguments advanced by the plaintiff, the court grants the defendant's motion for partial summary judgment on Count VI.

IT IS THEREFORE ORDERED that the defendant's motion for partial summary judgment (Dk. 91) is denied in part and granted in part as set forth in the body of this opinion.

IT IS FURTHER ORDERED that the parties shall respond to this order within ten days of the date this order is filed.

At that time the court will determine whether certification is appropriate. If the court determines that certification is not appropriate, the court will reconsider *sua sponte* the defendant's motion for partial summary judgment insofar as it relates to

the plaintiff's claims for negligent retention and/or supervision.